IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  No. 16-CR-0670 MCA

ZACHARY HAULCY

**Defendant.**

## ORDER

**THIS MATTER** is before the Court on Defendant Zachary Haulcy's *Motion to Suppress Evidence Seized as Fruit of Unlawful Seizure and Detention.* [Doc. 36] The Court has considered the written submissions of the parties, the record in this case, the evidence adduced at the evidentiary hearing held on December 20, 2016, and the pertinent law. The Court, being otherwise fully advised, denies the *Motion*.

### I. BACKGROUND

Defendant is charged with Possession with Intent to Distribute Heroin and Methamphetamine contrary to 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(C). [Doc. 14] The present *Motion* pertains to the circumstances that led police to discover those substances in Defendant's vehicle. As grounds for suppressing the narcotics evidence, Defendant argues: (1) that the traffic stop that led police to discover the narcotics was not supported by reasonable suspicion of a traffic violation; and (2) that the deputy unlawfully detained Defendant after issuing a traffic citation. [Doc. 36 p. 3, 5]

### II. FINDINGS OF FACT

The Court held an evidentiary hearing on Defendant's *Motion to Suppress*. Two witnesses testified at this hearing: Deputy Patrick Rael for the Government; and Defendant, on his own behalf.

**The Court finds that:**

1. Deputy Patrick Rael is employed by the Bernalillo County Sheriff's Office, and he is also a task force officer with Homeland Security. He works on the highway specializing in criminal interdiction, and his duties include conducting traffic stops for traffic violations.

2. Over the course of Deputy Rael's fourteen-year career in law enforcement, he has conducted approximately 10,000-15,000 traffic investigations, and he has been involved in thousands of narcotics cases.

3. On January 15, 2016, Deputy Rael was on patrol on west I-40 between mile markers 149 and 131.

4. Deputy Real noticed a small passenger car—a maroon Saturn—following a tractor-trailer at a distance of less than three car lengths. The Saturn passed the tractor trailer and pulled in front of it, again, leaving less than three car lengths between the two vehicles.

5. A tractor trailer's mirrors do not reflect a vehicle that is within three car lengths of the tractor trailer. Thus, a car that is travelling within three car lengths behind a tractor trailer is invisible to the tractor trailer's driver.

6. A car travelling within three car lengths in front of a tractor trailer does not permit the driver of the tractor trailer to stop on time to avoid a collision in the event that the car must make an evasive move in traffic.

7. It is unreasonable and unsafe to travel within three car lengths of a tractor trailer at highway speed.

8. Deputy Rael, having observed the Saturn's unsafe driving proximity to the tractor trailer, initiated a traffic stop of the Saturn.

9. Defendant was the driver, and sole occupant, of the Saturn.

10. In response to Deputy Rael's request for documentation, Defendant provided the deputy with his driver's license and a rental agreement for the Saturn.

11. The rental agreement was from a car rental company in Las Vegas, Nevada.

12. Defendant's driver's license was from the State of California.

13. Deputy Rael believed that Defendant was nervous because his hands were shaking; however, it was a cold day in January, and the Court is not persuaded from the evidence that Defendant's hands were shaking from nervousness instead of coldness.

14. Pursuant to Deputy Rael's request, Defendant joined the deputy at his patrol vehicle. This was safer (alongside the interstate) and more convenient (in terms of conversing) than Defendant sitting in his car while the deputy conducted his traffic investigation by shuttling back and forth between his own and Defendant's vehicle.

15. As Deputy Rael read the rental agreement, he noticed that the address given there was different from the address on Defendant's driver's license. When Deputy Rael asked Defendant about the address discrepancy, Defendant told the deputy that he was moving. Defendant further explained, "[t]hat's what I'm doing now. I'm going to Louisiana to pick up my cousins. We're all moving to Vegas." [Gov't. Ex. 2 p. 5]

16. Deputy Rael noticed that, according to the rental agreement, Defendant had rented the car for only four days—from January 14-18 which, in the context of travel time, indicated to Deputy Rael that Defendant was going to Louisiana only to turn around and drive back to Las Vegas, Nevada.

17. Deputy Rael issued a warning citation to Defendant for following too closely.

18. After issuing the warning citation, Deputy Rael told Defendant to "Have a safe trip" and "good luck." [Gov't Ex. 2 p. 11-12] Deputy Rael considered Defendant free to leave at that time.

19. Defendant took approximately six steps toward his own vehicle and away from Deputy Rael, then, because Deputy Rael was suspicious of Defendant's travel plans, he called out to Defendant, "May I ask you some more questions?" Defendant replied, "Yes." [Gov't Ex. 2 p. 12]

20. Deputy Rael was polite and respectful toward Defendant. He did not draw his weapon, use force, or speak in a commanding tone of voice.

21. Deputy Rael asked Defendant about the purpose of his trip to Louisiana. Defendant's responses were, in Deputy Rael's opinion, confusing and indicated that Defendant was stalling.

22. Deputy Rael then asked Defendant a series of questions pertaining to whether Defendant had any weapons or illegal drugs. When Deputy Rael began inquiring about drugs, specifically, Defendant did not answer simply "yes" or "no" but, rather, he provided elaborate and somewhat non-responsive answers. For example, when Deputy Rael asked whether Defendant had marijuana, Defendant replied, "No, sir" . . . . Even though I have a medical license, but I can't drive." As another example, when Deputy Rael asked Defendant whether he had any methamphetamine, Defendant replied: "No. I don't do none of that stuff. I don't even drink." To Deputy Rael, Defendant's answers indicated that Defendant was nervous.

23. Deputy Rael, who is equipped with a canine unit, asked whether Defendant would permit him to "run [the] dog around [Defendant's] vehicle." Defendant replied "Yeah."

24. Deputy Rael also sought and received Defendant's written permission, on a consent form, to search Defendant's vehicle.

25. The canine "alerted" to the vehicle, and upon searching the trunk of the vehicle, Deputy Rael found cylinders containing methamphetamine.

26. Deputy Rael arrested Defendant.

27. Defendant's testimony concerning the circumstances that led to the traffic stop differed, somewhat, from Deputy Rael's.

28. According to Defendant, he was never behind the tractor trailer; instead, he had been travelling in "the fast lane" for about a quarter of a mile before he started passing the truck, which was travelling in the "slow lane."

29. After he saw the lights of the police vehicle, Defendant testified, he crossed into the right lane "a few feet in front of the" tractor trailer. In Defendant's later testimony he estimated that he was approximately four car lengths in front of the tractor trailer, which, in his view, was a safe distance.

30. Defendant testified that, in his view, there was no basis for the traffic stop.

31. Were Defendant credible, his testimony in this regard could be construed as to cast doubt on Deputy Rael's testimony regarding Defendant's driving. However, Defendant's credibility was entirely diminished by his testimony regarding the details of his car rental agreement.

32. A copy of Defendant's car rental agreement was admitted as Government's Exhibit 3.

33. In the margin of the car rental agreement is a hand-written note that reads, "So Calif. & Back"; underneath that note are the initials "ZH." Defendant testified that he initialed the note "ZH."

34. In a box on the car rental agreement form that is demarcated "Authorized To Drive In[,]" there is a hand written note: "NV/CA."

35. While the foregoing markings clearly indicate that Defendant was authorized to drive the rental car only in Nevada and California, and while Defendant acknowledged that he initialed the note in the margin and signed the car rental agreement, he nevertheless denied that the agreement limited his use of the rental car to Nevada and California.

36. Defendant testified that the rental agreement permitted him to use the car in any state in the country provided that he returned it to the rental company before his $500.00 deposit ran out.

37. Defendant further testified that the reason that the rental company associate wrote, "So Calif. & Back" in the margin was to "make sure" that Defendant returned the car when he was done using it.

38. Defendant's testimony in this regard was not credible. That Defendant did not provide credible testimony about the terms of the rental agreement, which was in evidence before the Court and which objectively contradicted Defendant's testimony, casts doubt on the veracity of other aspects of his testimony—particularly his self-serving version of the events leading to the traffic stop.

39. Deputy Rael's testimony regarding the events that led to the traffic stop, on the other hand, was credible.

40. Deputy Rael's testimony regarding the events that occurred after the traffic stop was credible, and is supported by the audio recording of his interactions with Defendant.

### III. ANALYSIS

## A. The Traffic Stop

Defendant argues that Deputy Rael violated his Fourth Amendment right to be free from unreasonable searches and seizures by conducting the traffic stop in this case without reasonable suspicion. [Doc. 36 p. 3] Defendant seeks to suppress the narcotics evidence discovered as a result of the purportedly unconstitutional seizure. [Doc. 36 p. 7]

"A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Trestyn*, 646 F.3d 732, 741 (10th Cir. 2011). A "traffic stop is valid under the Fourth Amendment . . . if [it is] based on an observed traffic violation[.]" *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (stating that the court's "sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated any of the multitude of applicable traffic and equipment regulations of the jurisdiction"). The Court analyzes traffic stops under principles developed for investigative detentions. *Trestyn*, 646 F.3d at 742. The Court must be satisfied that the stop was (1) justified at its inception and (2) reasonably related in scope to the circumstances that initially justified the stop. *Id.*

NMSA 1978, Section 66-7-318(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Deputy Rael's observation of Defendant travelling within three car lengths of a tractor trailer at highway speed in violation of Section 66-7-318 provided a valid basis for the traffic stop. *Hunnicutt*, 135 F.3d at 1348. The Court is satisfied that the stop was justified at its inception.

**The Post-Citation Exchange**

Defendant also argues that Deputy Rael violated Defendant's Fourth Amendment right to be free from an unreasonable seizure by detaining Defendant after issuing the warning citation. [Doc. 36 p. 6] The Government contends that Defendant voluntarily consented to answer Deputy Rael's additional questions and, therefore, the post-citation exchange was a consensual encounter. Under the facts of this case, the law supports the Government's contention.

"A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). "Whether an encounter can be deemed consensual depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." *Id.* On one hand, an officer's "coercive show of authority" such as his "display of a weapon, physical touching, or his use of a commanding tone of voice indicating that compliance might be compelled" may lead the driver to an objective belief that he is not free to end the conversation and proceed on her way. *Id.* at 1177. On the other hand, "[a]n officer is not required to inform a suspect that he [does] not have to respond to his questioning, or that he [is] free to leave." *Id.* at 1176-77.

Deputy Rael's conduct toward Defendant after issuing the citation did not constitute a coercive show of authority. After issuing a warning citation to Defendant and wishing him a safe trip and good luck, Deputy Rael said to Defendant, "May I ask you some more

9

questions?" In so asking, Deputy Rael used a calm and polite (as opposed to a commanding) tone of voice. Deputy Rael did not display a weapon nor did he physically touch Defendant. Indeed, Defendant confirmed during his testimony that Deputy Rael did not raise his voice, draw his weapon, or threaten him. Instead, Defendant confirmed, Deputy Rael was polite and professional during their interactions.

In sum, Deputy Rael's conduct toward Defendant in initiating, and in pursuing, his post-citation interaction with Defendant was not such that it would convey to a reasonable person that he was not free to decline the deputy's request or otherwise terminate the encounter. *See West*, 219 F.3d at 1176 (stating the standard by which a court determines whether an encounter is consensual). Under these circumstances, Defendant's interaction with Deputy Rael following the deputy's issuance of a warning citation constituted a consensual encounter. Defendant's arguments to the contrary do not warrant suppression of the narcotics evidence.

## IV. CONCLUSION

For the reasons stated herein, Defendant's *Motion to Suppress Evidence Seized as Fruit of Unlawful Seizure and Detention* (Doc. 36) is **DENIED**.

**SO ORDERED** this 7th day of July, 2017 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**